**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

CAROLYN A. JOHNSON,                                                                    PLAINTIFF
on behalf of P.M.W.

v.                                                      No. 4:11CV00021 JLH

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                                  DEFENDANT

**<u>OPINION AND ORDER</u>**

The plaintiff, Carolyn A. Johnson, pro se, has appealed the final decision of the

Commissioner of the Social Security Administration to deny her claim for Supplemental Security

Income on behalf of her minor granddaughter,[1] P.M.W.[2] ("the claimant").  Both parties have filed

briefs and the case is ready for decision.

The Court's function on review is to determine whether the Commissioner's decision is

supported by substantial evidence on the record as a whole.  42 U.S.C. §§ 405(g), 1383(c)(3); *Moore*

*ex rel. Moore v. Barnhart*, 413 F.3d 718, 721 (8th Cir. 2005); *see Young ex rel. Trice v. Shalala*, 52

F.3d 200, 201-02 (8th Cir. 1995) (substantial evidence review in child benefits case).  Substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore ex rel. Moore v. Barnhart*, 413

F.3d at 721.

In assessing the substantiality of the evidence, the Court must consider evidence that detracts

from the Commissioner's decision as well as evidence that supports it; the Court may not, however,

reverse the Commissioner's decision merely because substantial evidence would have supported an

---

[1] The plaintiff testified she was also her court-appointed guardian.  (Tr. 21)

[2] The claimant is a minor.  (Tr. 24, 76)  In accordance with Fed. R. Civ. P. 5.2(a), only her
initials should be used in court filings.

opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The Commissioner found the claimant not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that the claimant was not disabled within the meaning of the Act is supported by substantial evidence.

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(I) (1996).

After conducting an administrative hearing at which the plaintiff testified,[3] the Administrative Law Judge concluded that the claimant had not been under a disability within the meaning of the Social Security Act at any time through June 25, 2009, the date of his decision. (Tr. 17) On November 15, 2010, the Appeals Council denied the plaintiff's request for a review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 1-3)

The plaintiff then filed her complaint initiating this appeal. (Docket #2) After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

---

[3] The ALJ's decision states that the claimant was present at the hearing and testified. (Tr. 12) That is incorrect. (Tr. 18-38) In many cases, such an egregious misstatement of a basic fact would call the entire decision into question. *See Baumgarten v. Chater*, 75 F.3d 366, 368-69 (8th Cir. 1996) (several inconsistencies relied upon by ALJ not supported by record). Under the circumstances presented here, however, the mistake is no more than a scrivener's error. The only testimony attributed to the claimant was that she was twelve years old and a student in the sixth grade. (Tr. 12) Those facts are undisputed. The ALJ did not make any credibility determination about the claimant. *Id.* None of his important decisional findings appear to have been based on her presence or supposed testimony. (Tr. 12-17)

As already noted, at the time of the administrative hearing, the claimant was twelve years old and a student in the sixth grade. (Tr. 12) In determining whether an SSI claimant under the age of 18 is under a disability, a three-step sequential evaluation process is used which is comparable to the five-step sequential evaluation process utilized for adults. 20 C.F.R. § 416.924(a) (2008).

The first step is a determination of whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If so, benefits are denied; if not, the evaluation continues to the next step.

The second step involves a determination of whether the impairment or combination of impairments is severe, i.e., more than a slight abnormality that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c). If not, benefits are denied; if so, the evaluation continues.

The third step involves a determination of whether the child has an impairment or impairments that meet, medically equal or functionally equal in severity a Listed impairment. 20 C.F.R. § 416.924(d). If so, and if the duration requirement is met, benefits are awarded; if not, benefits are denied.

The ALJ found the claimant had never engaged in substantial gainful activity. (Tr. 11) He determined that she did have a "severe" impairment—borderline intellectual functioning—but that she did not have any impairment or combination of impairments that met or medically equaled a Listing or that functionally equaled a Listed impairment. *Id.* Consequently, he found that she was not disabled.

The ALJ specifically considered Listings 112.05D and 112.05E. Those Listings, in pertinent part, read as follows:

112.05  Mental Retardation:  Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.

The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.

\* \* \*

D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant limitation of function;

Or

E. A valid verbal, performance, or full scale IQ of 60 through 70 and:

\* \* \*

2. For children (age 3 to attainment of age 18), resulting in at least one of paragraphs B2b or B2c or B2d of 112.02;

Or

\* \* \*

2. For children (age 3 to attainment of age 18), resulting in the satisfaction of 112.02B2a, and a physical or other mental impairment imposing additional and significant limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2008).

The referenced portions of Listing 112.02B read as follows:

2. For children (age 3 to attainment of age 18), resulting in at least two of the following:

a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

4

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.02B (2008).

In July of 2007, Paul L. Deyoub, Ph.D., performed a mental diagnostic evaluation and intellectual assessment of the claimant. (Tr. 137-42) As a part of that evaluation, Dr. Deyoub administered the Wechsler Intelligence Scale for Children-III and Wide Range Achievement Test-4. (Tr. 139-40) The ALJ noted in his decision the claimant's IQ scores—a verbal IQ of 66, performance IQ of 66, and full-scale IQ of 64—if valid, satisfied the first prong of Listing 112.05D. (Tr. 11) The ALJ found that she did not have another physical or mental impairment imposing an additional and significant limitation of function. (Tr. 11) Therefore, she did not satisfy the second prong of 112.05D.

Dr. Deyoub noted that the claimant scored much higher on the WRAT-4 than she had on the WISC-III:

> Even though she has a 64 IQ, she had academic ability much higher than this. Word Reading was 85, Spelling, 78, and Math, 99. I had no evidence that she was not trying her best on the intelligence test, but this was a surprising achievement on the WRAT-4 with such good academic scores. <u>This certainly has a modifying influence on those IQ results</u> because on Math she was able to do problems as difficult as 4 times 17, and she subtracted 597 from 724, and she even rounded a number correctly. She was able to read words like diagram, ceiling, abuse, and knowledge. Spelling was not as good with a score of 78, but she spelled light, must, make, hem, and on.

(Tr. 140) (emphasis added).

Nevertheless, he diagnosed mild mental retardation,[4] at least in part based on the plaintiff's information that the claimant was not doing well in school. (Tr. 141)

There is no evidence that the claimant satisfied any of the paragraphs of Listing 112.02B. Additionally, Disability Determination Services physicians reviewed records and determined the claimant had a "severe" impairment, but did not meet, medically equal or functionally equal a Listing. (Tr. 144-45, 168-69) The ALJ is entitled to rely on the opinions of reviewing physicians when considering whether the claimant meets the requirements of a listed impairment. *Ostronski v. Chater*, 94 F.3d 413, 417 (8th Cir. 1996).

Since the claimant had a "severe" impairment, but the impairment did not meet or medically equal a Listing, the ALJ was required to determine if the impairment functionally equaled a Listing. 20 C.F.R. § 416.926a(a) (2008).

Currently, evaluating functional equivalence is based only on domains of functioning. Domains are broad areas of functioning intended to capture all of what a child can or cannot do. Social Security Ruling 09-2p, at *1. Under this regulation, an impairment is functionally equivalent to a Listing when the impairment results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a(a) (2008).

A "marked" limitation in a domain seriously interferes with a child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2) (2008). It also means a limitation that is "more than moderate" but "less than extreme." *Id.* It is the equivalent of functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id.*

---

[4] Mild mental retardation equals an IQ level of 50-55 to approximately 70. Diagnostic and Statistical Manual of Mental Disorders 42 (4th ed., Text Revision 2000).

An "extreme" limitation in a domain very seriously interferes with a child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3) (2008). "Extreme" limitation also means a limitation that is "more than marked." *Id.* It is the rating given to the worst limitations. *Id.* It is the equivalent of functioning expected on standardized testing with scores that are at least three standard deviations below the mean. *Id.*

The domains of functioning are:

1) Acquiring and using information;

2) Attending and completing tasks;

3) Interacting and relating with others;

4) Moving about and manipulating objects;

5) Caring for yourself; and

6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(I-vi) (2008).

These domains are described in greater detail, with examples, in the regulations. 20 C.F.R. § 416.926a(g)-(l) (2008).

The ALJ found the claimant had "less than marked" limitation of function in the domain of acquiring and using information, and no limitation in the remaining five domains. (Tr. 12-17) A limitation in acquiring and using information is the thrust of the plaintiff's testimony and brief. (Tr. 29, Brief at 1) Therefore, the Court will address that domain. The regulation states, in pertinent part:

> (g) Acquiring and using information. In this domain, we consider how well you acquire or learn information, and how well you use the information you have learned.

(1) General. (I) Learning and thinking begin at birth. You learn as you explore the world through sight, sound, taste, touch, and smell. As you play, you acquire concepts and learn that people, things, and activities have names. This lets you understand symbols, which prepares you to use language for learning. Using the concepts and symbols you have acquired through play and learning experiences, you should be able to learn to read, write, do arithmetic, and understand and use new information.

(ii) Thinking is the application or use of information you have learned. It involves being able to perceive relationships, reason, and make logical choices. People think in different ways. When you think in pictures, you may solve a problem by watching and imitating what another person does. When you think in words, you may solve a problem by using language to talk your way through it. You must also be able to use language to think about the world and to understand others and express yourself; *e.g.*, to follow directions, ask for information, or explain something.

(2) Age group descriptors.

* * *

(iv) School-age children (age 6 to attainment of age 12). When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; *e.g.*, by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (*e.g.*, reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

(v) Adolescents (age 12 to attainment of age 18). In middle and high school, you should continue to demonstrate what you have learned in academic assignments (*e.g.*, composition, classroom discussion, and laboratory experiments). You should also be able to use what you have learned in daily living situations without assistance (*e.g.*, going to the store, using the library, and using public transportation). You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (*e.g.*, to obtain and convey information and ideas). You should also learn to apply these skills in practical ways that will help you enter the workplace after you finish school (*e.g.*, carrying out instructions, preparing a job application, or being interviewed by a potential employer).

(3) Examples of limited functioning in acquiring and using information. The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; *e.g.*, an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

(I) You do not demonstrate understanding of words about space, size, or time; *e.g.*, in/under, big/little, morning/night.

(ii) You cannot rhyme words or the sounds in words.

(iii) You have difficulty recalling important things you learned[ ]in school yesterday.

(iv) You have difficulty solving mathematics questions or computing arithmetic answers.

(v) You talk only in short, simple sentences and have difficulty explaining what you mean.

20 C.F.R. § 416.926a (2008).

The ALJ thoroughly detailed his determination in this domain:

The claimant has less than marked limitation in acquiring and using information. Test results with the WISC-III showed that claimant had intelligence quotients of: V=66; P=66; and FS=64 (Exhibit 5F, p. 4). Yet testing with the WRAT-4 showed she had scores of: Reading, 85; Spelling, 78; and Math, 99. These results can only lead to the conclusion that claimant's academic ability is much higher than her Full Scale intelligence quotient of 64. A Mental Diagnostic Evaluation and Functional Assessment, in July 2007, conducted by Paul L. Deyoub, Ph.D., revealed that claimant had a Global Assessment of Functioning Scale Score of 70 (Exhibit 5F, p.5). This means that claimant was having some difficulty in school but generally was functioning pretty well.

During the claimant's 5th grade school year at Dreamland Academy, several criteria were considered in formulating a tailored IEP[5] plan for claimant. She was only able to read on a 3rd grade level. She made average grades in math and her other courses, but she had trouble focusing on her homework. Claimant appeared to need small group instruction. She needed a greater degree of structure for behavior management than some of her peers did. She needed a more flexible approach for program delivery. These criteria were used to determine what her least restrictive environment should be (LRE).

Claimant's 6th grade semester grades were: physical education and health, 92; test preparation, 85; science, 77; social studies, 75; math, 62; and language and arts, 89. Claimant is passing all courses except math. The undersigned opines this does not indicate that her 'mild mental retardation' is causing marked limitations in Acquiring and Using Information and agrees with the State Agency assessment which only found less than marked limitations in Acquiring and Using information and no limitations in the other 5 domains. See also the study of the 'whole child' and Social Security Ruling 09-3p. Moreover, claimant's grandmother testified claimant's behavior and academic problems resulted in 3 or 4 parent/teacher conferences when claimant was in the 5th grade but none in the 6th grade.

(Tr. 13) (emphasis in original).

The ALJ's determination in the domain of acquiring and using information is supported by substantial evidence, including the evaluation by Dr. Deyoub, the assessment of Disability Determination Services physicians, and the questionnaire answers given by the claimant's fifth grade teacher who observed no limitation of functioning in any of the six domains. (Tr. 137-42, 144-45, 168-69, 150-57) There is no evidence of significant limitation in the remaining five domains.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ.

---

[5] Individualized Education Plan. Neal M. Davis, Medical Abbreviations: 30,000 Conveniences at the Expense of Communications and Safety 153 (14th ed. 2009).

The Court has reviewed the entire record, including the complaint, the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.  There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.  *Richardson v. Perales*, 402 U.S. at 401; *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004).  The Commissioner's decision is not based on legal error.

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses the plaintiff's complaint with prejudice.

IT IS SO ORDERED this 2nd day of November, 2011.

 

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE